**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LEON B. ROSENBLATT TEXTILES, LTD.** <br> **Plaintiff** | : | |
| **VS.** | : | **C.A. No. 2001-56** |
| **NICHOLAS L. GRISETO** <br> **Defendant** | : | |

**MOTION FOR ORDER TO SHOW CAUSE**
**WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT**

Plaintiff, Leon B. Rosenblatt Textiles, Ltd. ("Rosenblatt"), moves this Honorable Court for an Order to Show Cause Why Defendant Should Not be Held in Contempt. As support for its motion, Plaintiff states as follows:

1. On September 14, 2001, this Court entered an Order for Instalment Payments (the "Order") pursuant to which Defendant was ordered to make periodic payments toward satisfaction of the judgment in the amount of $58,684.74 entered in favor of Plaintiff Leon B. Rosenblatt Textiles, Ltd. against Nicholas L. Griseto by the United States District Court for the Southern District of New York on September 30, 1999.

2. The Order clearly and unambiguously requires Defendant to make payments of $500 on or before the 15th and 30th day of each month, beginning September 15, 2001, until such judgment, plus post-judgment statutory interest, is satisfied. A copy of the Order is attached as **Exhibit A**.

3. Griseto was served with the Order on September 12, 2001 and Rosenblatt's counsel subsequently provided Griseto with additional explanation of the terms of the Order.

4. Griseto has paid the sum of $58,684.78, but refuses to pay the post-judgment statutory interest that has accrued.

5. As a result of his refusal to pay the post-judgment statutory interest required by the Order, Griseto has failed to comply with this Court's Order.

Wherefore, Plaintiff requests this Court to order Griseto to show cause why he should not be held in contempt of the Order and to order such other and further relief as justice and equity require.

**LEON B. ROSENBLATT TEXTILES, LTD.**

By their Attorney,

WINOGRAD, SHINE & ZACKS, P.C.

/s/ Melissa M. Horne

Melissa M. Horne, Esq.
State Bar No. 5291
123 Dyer Street
Providence, RI 02903
(401) 273-8300 Telephone
(401) 272-5728 Facsimile

Dated:

**CERTIFICATION**

I hereby certify that on the 13th day of February, 2007, I forwarded a true copy of the Motion for Order to Show Cause Why Defendant Should Not Be Held In Contempt to Nicholas L. Griseto at 82 High Street, Unit 20, Westerly, RI 02891 by first class mail and e-mail.

/s/ Melissa M. Horne

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LEON B. ROSENBLATT TEXTILES, LTD.** **Plaintiff** | : | |
| **VS.** | : | **C.A. No. 2001-56** |
| **NICHOLAS L. GRISETO** **Defendant** | : | |

**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT**

## I. INTRODUCTION

Plaintiff has filed its Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt ("Motion for Show Cause Order") as part of its continuing effort to collect a judgment entered on September 30, 1999 against Defendant Nicholas L. Griseto ("Griseto") in favor of Plaintiff Leon B. Rosenblatt Textiles, Ltd. ("Rosenblatt") in the amount of $58,684.74 by the United States District Court for the Southern District of New York. Continuing a pattern of contemptuous behavior toward the federal courts, Griseto has failed to comply with this Court's Order requiring him to satisfy the judgment, plus post-judgment statutory interest, through periodic payments. As a result, Rosenblatt requests this Court to order Griseto to show cause why he should not be held in contempt of this Court's Order and to order such other and further relief as justice and equity

require.

## II. FACTS

### A. The Underlying Judgment

The judgment which Rosenblatt seeks to enforce was entered by the United States District Court for the Southern District of New York after Griseto refused to produce tax returns requested through discovery and then repeatedly failed to appear at hearings scheduled by the Court to address the discovery issue. Memorandum, Opinion and Order entered September 22, 1999 in Leon Rosenblatt Textiles, Ltd. v. Nicholas L. Griseto, U.S. District Court, S.D.N.Y., C.A. No. 96 Civ 2925 (JSM), attached as **Exhibit A**. After questioning Griseto's credibility, the Court found that Griseto's actions "were a deliberate attempt to defy the authority of the court and delay the proceedings" and entered a default judgment against him. Id. at 5-9. In calculating the damages which comprise the judgment, the Court found that Griseto had engaged in willful copyright infringement based upon Griseto's admissions that he had entered into a royalty agreement with Rosenblatt and then sold Rosenblatt's fabrics without paying the royalty. Id. at 11. In addition, Judge Martin concluded, among other things, that "Mr. Griseto has not acted in good faith in this case and has willfully refused to comply with at least two orders of the Court." Id. at 5.

### B. The Order for Instalment Payments

After registering the judgment in this Court, Rosenblatt filed a Motion to Attach and for Temporary Restraining Order. When the matter came on for hearing, the parties agreed to proceed as though in supplemental proceedings. After the hearing, this Court entered an Order for Instalment Payments (the "Order") pursuant to which Griseto was ordered to make periodic payments toward satisfaction of the $58,684.74 judgment, plus post-judgment statutory interest. The Order clearly and unambiguously requires Griseto to make payments of $500 on or before the 15th and 30th day of each month, beginning September 15, 2001, until such judgment, plus post-judgment statutory interest, is satisfied. A copy of the Order is attached as Exhibit A to the Motion for Show Cause Order.

The Order was served upon Gristeo on September 12, 2001. Affidavit of Melissa M. Horne ("Horne Aff.") at ¶ 4. Griseto subsequently sent a letter to the Court in which he questioned the inclusion of post-judgment statutory interest in the Order. Judge Lagueux requested Rosenblatt's counsel to address the issue with Griseto. (A copy of the letter from Judge Lagueux to M. Horne dated 9/24/01, enclosing a letter from N. Griseto to Judge Lagueux dated 9/16/01 is attached as Exhibit A to the Horne Aff.) As a result, Rosenblatt's counsel sent a letter to Defendant explaining the statutory basis for the recovery of post-judgment statutory interest. (A copy of the letter from M. Horne to N.

Griseto dated 9/16/01 is attached as Exhibit B to the Horne Aff.)

## C. **Griseto Has Not Complied With The Order**.

Griseto made timely payment of the initial payment due on September 15, 2001. Horne Aff. at ¶ 7. Thereafter, his payments were routinely late. Id. at ¶ 8. Rosenblatt's counsel frequently had to prompt Griseto to make his payments by threatening to file a motion requesting the Court to order him to show cause why he should not be adjudged in contempt. Id. at ¶ 9.

On July 31, 2006, Griseto sent a letter to Rosenblatt's counsel asserting that he had made payments totaling $58,500 and that his next payment of $184.74 would be his final payment. (A copy of Griseto's letter is attached to the Horne Aff. as Exhibit D.) On August 13, 2006, Griseto sent Rosenblatt's counsel a check in the amount of $184.74 together with a letter stating that the check is "final and full payment concerning the above mentioned Judgment." The check bore the notation "Final Payment Rosenblatt." (A copy of the check and Griseto's letter is attached to the Horne Aff. as Exhibit E.)

Rosenblatt's counsel wrote to Griseto to advise that Rosenblatt did not consider the Judgment to be paid in full or settled, as there remained an outstanding balance of $14,319.23,

plus accruing post-judgment statutory interest. Horne Aff. at ¶ 12. Griseto has not made any additional payments nor has he contacted Rosenblatt's attorneys. Id. at ¶ 13. The outstanding balance as of February 8, 2006 is $14,335.71. Id. at ¶ 14.

## III. ARGUMENT

A court has the inherent authority to enforce its lawful orders through contempt proceedings. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). In a civil contempt proceeding, sanctions may be imposed to compel compliance with a court order and/or to compensate a party harmed by noncompliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

In order to establish civil contempt,

> "the proof must establish (1) that the alleged contemnor had notice that he was 'within the order's ambit'; (2) that the order was 'clear and unambiguous'; (3) that the alleged contemnor had the ability to comply; and (4) that the order was indeed violated."

*U.S. v. Saccoccia*, 433 F.3d 19, 27 (2005) (citations omitted).

The evidence in this case will establish civil contempt. The Order clearly and unambiguously orders Griseto to pay the judgment "plus post-judgment statutory interest." Griseto clearly had notice he was required to pay interest, as Rosenblatt's counsel explained to him the basis for the inclusion of post-judgment interest in the Order. *See* letter from M. Horne to N. Griseto of 9/26/01, attached as Exhibit B to Horne Aff.

Griseto has not indicated he is unable to comply with the Order; he apparently has chosen not to pay the interest owed on the Judgment despite the repeated explanations by Rosenblatt's counsel of his obligation to do so.

A finding of civil contempt may result in imprisonment or a conditional fine to induce compliance with the court's order and/or a compensatory fine to make the aggrieved party whole for damages caused by the contemnor's conduct. *In re Kave*, 760 F.2d 343, 351 (1st Cir. 1985). A compensatory fine must be based upon evidence of the complainant's actual damages. *Id.* at 352. In this case, Rosenblatt has incurred more than $2,111.24 in attorney's fees and costs in connection with its efforts to obtain payment of the post-judgment interest in compliance with the Order. Horne Aff. at ¶ 15.

**IV. <u>CONCLUSION</u>**

Griseto has violated a clear and unambiguous Order of this Court by refusing to pay the interest due under the terms of the Order. This Court should enforce its Order by ordering Griseto to immediately pay $14,335.71, plus not less than $2,111.24 in attorney's fees and costs.

**LEON B. ROSENBLATT TEXTILES, LTD.**

By their Attorney,

WINOGRAD, SHINE & ZACKS, P.C.

/s/ Melissa M. Horne

Melissa M. Horne, Esq.
State Bar No. 5291
123 Dyer Street
Providence, RI 02903
(401) 273-8300 Telephone
(401) 272-5728 Facsimile

Dated:

**CERTIFICATION**

I hereby certify that on the 13th day of February, 2007, I forwarded a true copy of the Memorandum in Support of Motion for Order to Show Cause Why Defendant Should Not Be Held In Contempt to Nicholas L. Griseto at 82 High Street, Unit 20, Westerly, RI 02891 by first class mail and e-mail.

/s/ Melissa M. Horne

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LEON B. ROSENBLATT TEXTILES, LTD. :
Plaintiff :

vs. : M.C. No. 2001-56

NICHOLAS L. GRISETO :
Defendant :

RECEIVED SEP 1 2001 U.S. DISTRICT COURT DISTRICT OF R.I.

**ORDER FOR INSTALMENT PAYMENTS**

This matter came to be heard on September 12, 2001 on Plaintiff's Motion to Attach. The parties having subsequently consented to supplemental proceedings, and after a hearing thereon, it is hereby

**ORDERED, ADJUDGED, AND DECREED:**

1. Defendant Nicholas L. Griseto shall make periodic payments toward satisfaction of the judgment in the amount of $58,684.74 entered in favor of Plaintiff Leon B. Rosenblatt Textiles, Ltd. against Nicholas L. Griseto by the United States District Court for the Southern District of New York on September 30, 1999.

2. Defendant Nicholas L. Griseto shall make such periodic payments by paying $500 on or before the 15th and 30th day of each month, beginning September 15, 2001, to counsel for Plaintiff, Melissa M. Horne, Winograd, Shine and Zacks, P.C., 123 Dyer Street, Providence, Rhode Island 02903 until such judgment, plus post-judgment statutory interest, is satisfied.



10

ENTERED as an Order of this Court the ___ day of September, 2001.

ENTER:

PER ORDER:

Ronald R. Lagueux    Barry OA

Dated: 9/14/01

This Order Presented By:

Melissa M. Horne, Esq.
State Bar No. 5291
WINOGRAD, SHINE & ZACKS, P.C.
123 Dyer Street
Providence, RI 02903
Telephone: (401) 273-8300
Facsimile: (401) 272-5728

**Certification**

I hereby certify that on the _____ day of September, 2001, I forwarded a true copy of the Order for Installment Payments to Nicholas L. Griseto at 82 High Street, Westerly, RI by first class mail.

______________________

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

LEON B. ROSENBLATT TEXTILES, LTD.,

Plaintiff,

-v.-

NICHOLAS L. GRISETO,

Defendant.

---------------------------------------X

96 Civ. 2925 (JSM)

**MEMORANDUM OPINION AND ORDER**

JOHN S. MARTIN, Jr., District Judge:

There comes a point when a defendant's disregard of explicit orders of the Court can no longer be tolerated and extreme sanctions must be invoked. The Court is satisfied that the defendant deliberately disregarded its orders on at least two occasions, even though he was on notice that a failure to comply would result in the entry of a default judgment against him.

This case was commenced in April 1996, against Nicholas Griseto and two business entities that he controlled. In March 1997, counsel for plaintiff sent a letter to the Court complaining that the defendants had failed to produce copies of their tax returns as requested. In a telephone conference on April 7, 1997, the Court ordered defense counsel to produce the requested tax returns.

By letter dated May 27, 1997, defense counsel moved to withdraw from the case and stated that the defendants had been advised that they must produce their tax returns by May 28, 1997. By order dated June 17, 1997, the Court granted defense counsel's application to withdraw and stayed all discovery for thirty days,

EXHIBIT

A

except "proceedings in connection with defendants' obligation to produce tax returns."

On October 6, 1997, defendant Griseto appeared pro se and, since no attorney appeared for the corporation, a default judgment was ordered as to the corporation. At that conference, the Court ordered Mr. Griseto to produce the requested discovery.

No further proceedings occurred until the Court contacted plaintiff's counsel and directed him to advise defendant that there would be a status conference on May 1, 1998. When Mr. Griseto failed to appear for that conference, this Court entered an order, dated May 5, 1998, scheduling a conference for June 2, 1998, which stated, "Should Mr. Griseto fail to appear at the conference on June 2, his answer will be stricken and a default judgment will be entered against him." The plaintiff sent a copy of this order to Mr. Griseto at the Court's request.

Mr. Griseto did not appear at the June 2 conference and nothing further was heard from him until the Court received from him a letter dated, November 9, 1998 responding to a motion for a default judgment against him which plaintiff had filed on October 5, 1998. Thereafter the Court scheduled a hearing on plaintiff's motion which was adjourned from time to time and finally held on March 25, 1999. At that hearing, Mr. Griseto claimed that he had never received notice of either the hearing of May 1 or June 2, 1998. He claimed that he had moved from the address to which plaintiff had sent the notice and that a notice faxed to him at a

former employer also did not reach him, because he had left that employer and the letter was not forwarded to him.

The hearing of March 25th was adjourned so that additional submissions could be made. However, near the end of the proceedings, plaintiff's counsel mentioned that Mr. Griseto had never produced the tax returns that the plaintiff had requested. Counsel stated that Mr. Griseto told him "he has not been able to find either his or his corporate tax returns." (Tr. at 31.) Counsel also noted that he had asked Mr. Griseto to sign IRS forms that would enable counsel to obtain the returns from the IRS, but that Mr. Griseto had not done so.

In response Mr. Griseto stated "I see no relevance at all in the tax returns . . . ." Id. The Court replied: "I do. I want that form signed and given to him by the end of the week." Id.

Although plaintiff's counsel had the forms in court, Mr. Griseto asked that he not be required to sign them immediately, because he wanted the opportunity to review them with an attorney. The Court agreed with this request but warned Mr. Griseto: "If it is not returned to Mr. Thomashower by Friday of next week, this hearing will terminate and the default in the amount requested will be entered." (Tr. at 32.)

By letter of April 9, 1999, plaintiff's counsel advised the Court that Mr. Griseto did not return the IRS forms to him as ordered by the Court and requested the Court to enter the default in accordance with its statement to Mr. Griseto at the hearing.

In response, the Court entered an order on April 22, 1999, directing Mr. Griseto to respond.

In his response Mr. Griseto admitted that he did have copies of his personal tax returns but claimed that he did not believe he was required to produce them. As to the corporate returns, he claimed he had not signed the IRS forms presented by Mr. Thomashower because they had been altered by him after they left court - the alteration being a change in the address of Mr. Thomashower's firm which had moved after the forms were prepared. Finally, Mr. Griseto claimed that he mailed the corporate return request to the IRS rather than returning it to Mr. Thomashower because the Court's instruction was to have it mailed and provide Mr. Thomashower with proof of the mailing.

**DISCUSSION**

Default judgements and dismissals with prejudice have been described as "drastic remedies" to be used only in "extreme circumstances." Independent Prods. Corp. v. Loew's Inc., 283 F.2d 730, 733 (2d Cir. 1960). Ordinarily they are imposed only after consideration of alternative less drastic sanctions. See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988). Defaults are not favored and any doubts about whether default is appropriate in a given case must be resolved in favor of a trial on the merits. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

Nonetheless, default judgments and dismissals are important weapons in a trial court's arsenal of sanctions and must be available for dealing with "willful violations of court rules, contumacious conduct, or intentional delays." Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852 (8th Cir. 1996); see also 10A Wright, Miller & Kane, Federal Practice and Procedure § 2693 (1998). The strong judicial preference for trial on the merits "is counterbalanced by considerations of social goals, justice and expediency, a weighing process which is largely within the domain of the judge's discretion." Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970). When exercising its discretion, the court may consider the willfulness of the defendant's actions, the amount of money at issue, whether the default is largely technical, and whether the plaintiff will be prejudiced by further delay. See Wing v. East River Chinese Restaurant, 884 F.Supp. 663, 669 (E.D.N.Y. 1995).

The Court has come to the conclusion that Mr. Griseto has not acted in good faith in this case and has willfully refused to comply with at least two orders of the Court.

Mr. Griseto failed to appear as ordered at conferences with the Court on May 1 and June 2, 1998. His excuse was that he did not get notice of those conferences. Having conducted a hearing on that issue at which both Mr. Thomashower and Mr. Griseto testified, the Court is persuaded that Mr. Griseto did in fact

have notice of the June 2 hearing and deliberately refused to attend.

After the letter advising Mr. Griseto of the May hearing was returned because he was no longer living at the address he had previously provided, Mr. Thomashower sent notice of the June 2 hearing by mail and by fax on May 7th to Mr. Griseto at Swan Finishing in Falls River, Massachusetts, his place of employment. Although Mr. Griseto claims he was not working at Swan Finishing on May 7th and that the notice from Mr. Thomashower was not forwarded to him, Mr. Griseto called Mr. Thomashower on May 13th and left a message for him to stop sending things to Swan and stating that he would provide him with a new address. No new address was provided until after plaintiff filed a motion for a default judgment in October 1998.

The Court does not credit the testimony of Mr. Griseto that he did not receive notice of the June 2nd hearing. His call to the Mr. Thomashower on May 13th, six days after the notice of the June 2nd hearing had been faxed to Swan indicates that the people at Swan had forwarded the notice to him, as one would expect.

Mr. Griseto claims, however, that his call to Mr. Thomashower on the 13th was prompted by his receipt from Swan of a fax Mr. Thomashower sent on May 4th and that he never received the May 7th fax. There are several reasons why this explanation is not credible. First, the fact that six days intervened between the fax and the call suggests that there was ample time for the

fax to have been forwarded to him by Swan. Second, he admitted that Swan had forwarded to him a May 4th fax from Mr. Thomashower and he offered no reason to suggest why the people at Swan would forward him the May 4th fax but not the one of the 7th. Finally and most significantly, the May 4th fax, which he admits receiving, contained a copy of an April 22 letter advising him that the Court had scheduled a conference in this matter for May 1, 1998, but he never contacted either the Court or counsel to explain his failure to appear at the conference on May 1. Had Mr. Griseto been acting in good faith he would have contacted the Court to explain his action or, at least, explained it to Mr. Thomashower in his phone message of May 13th. Mr. Griseto's total disregard of the fact that he had failed to appear for the Court ordered conference of May 1 is compelling evidence that he was deliberately attempting to delay these proceedings and supports the conclusion that he deliberately failed to appear on June 2nd. Moreover, his failure to provide a new address as promised in his May 13th telephone message is further evidence that he was not acting in good faith during this period.

Mr. Griseto's failure to produce the tax returns is also evidence of his bad faith. During the period when all the defendants were represented by counsel, plaintiff had requested production of the tax returns of all the defendants. In connection with defense counsel's application to withdraw, he sent a letter to the Court copying Mr. Griseto stating that he

advised his clients to produce their tax returns by May 28, 1997. Mr. Griseto did not comply with this direction, and on October 10, 1997, Mr. Thomashower again reminded Mr. Griseto that he was "to produce the tax returns for the years 1994 through 1996 for [him]self and the corporate defendants." (Letter from Thomashower to Griseto (Oct. 10, 1997)).

Mr. Griseto never responded to this reminder of his obligation. Finally at the hearing on March 25, 1999 when Mr. Thomashower stated that Mr. Griseto had said that "he has not been able to find either his or his corporate tax returns," (Tr. at 31), Mr. Griseto did not assert that he had never been requested to provide his personal returns, nor did he advise the Court and counsel that he had copies of his personal returns when the court told him to sign the IRS release by the end of the week or face a default judgment.

Given this background, Mr. Griseto's present claim that he did not believe he was required to either produce his personal tax returns or to execute an IRS form so counsel could obtain them is not credible. Moreover, it appears from Mr. Griseto's submission that he never had a lawyer review the IRS forms despite the fact that he told the Court that was the reason he was requesting a one week extension of the time in which he was to sign the forms. It is clear to the Court that Mr. Griseto was aware of his obligation to either produce copies of his individual tax returns or to sign a form to authorize plaintiff

to obtain them and that he deliberately failed to do so and he also deliberately disobeyed the court's order to sign the waiver forms and deliver them to Mr. Thomashower.

In sum, plaintiff has repeatedly been forced to seek the aid of the Court to require Mr. Griseto to meet his discovery obligations and to proceed with this case. Mr. Griseto has twice wilfully refused to comply with Court orders that clearly stated that, if he failed to comply, judgment would be entered against him. When considering default judgments courts generally give more leeway to pro se litigants who may not understand complex court procedures. See Enron Corp. v. Diakuhara, 10 F.3d 90, 97 (2d Cir. 1993). Mr. Griseto's failure to appear and failure to produce his tax returns did not result from any such a misunderstanding. Rather they were a deliberate attempt to defy the authority of the court and delay the proceedings.

Given the deliberate nature of Mr. Griseto's conduct and the clear warning given to him that his failure to comply with the Court's order would result in a default judgment being entered against him, it is appropriate to grant plaintiff's application for a default judgment. It is clear that any lesser sanction would be unavailing. Mr. Griseto's disobedience of this Court's direct orders have delayed the case for at least a year and have caused plaintiff to incur substantial legal fees. In these circumstances, it is appropriate to strike Mr. Griseto's answer and enter a default judgment against him. In this regard, the

Court has reviewed the application for a default judgment submitted by plaintiff on October 5, 1998, and finds that plaintiff has established that it is entitled to a judgment in the amount of $58,684.74.

The judgment of $58,684.74 is comprised of: contract damages of $8,733.37, interest of $2,888.00, copyright infringement damages of $8,733.37, and attorney's fees of $38,330.00.

The contract claim damages of $8,733.37 represent the agreed upon royalty of 3% on defendant's actual sales of plaintiff's copyrighted fabric. The actual sales figures were taken from defendant's financial statements.

Under New York Civil Practice Law and Rules §§ 5001 and 5004, plaintiff is entitled to interest on the contract claim damages at a rate of 9% per year from January 1, 1996, the last date defendant made sales of plaintiff's copyrighted fabric, through the date of this decision. As of September 3, 1999, interest of $2,888.00 is due on the contract claim damages.

Under 17 U.S.C. § 504, a copyright owner is entitled to collect actual damages or statutory damages. See Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1118 (2d Cir. 1986). Plaintiff in this case requested statutory damages, because actual damages were too difficult to calculate due to defendant's failure to cooperate in discovery.

Statutory damages of not less than $500 and not more than $20,000 may be awarded. 17 U.S.C. § 504(c)(1). However, if the

copyright owner sustains the burden of proving that the infringement was willful, a court in its discretion may enhance the award of statutory damages up to $100,000. 17 U.S.C. § 504(c)(2). Defendant's infringement is willful when he acts with the knowledge that his actions constitute copyright infringement, Fitzgerald, 807 F.2d at 1115; Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983), or when he acts with reckless disregard of the copyright owner's rights, N.A.S. Import. Corp. v. Chenson Enter., 968 F.2d 250, 252-53 (2d Cir. 1992).

Plaintiff in this case has established that defendant's infringement was willful. Defendant acknowledged the existence of an agreement whereby defendant agreed to pay plaintiff a 3% royalty for the sale of plaintiff's copyrighted patterns. (Answer ¶ 12.) Defendant also admits to selling plaintiff's patterns. Defendant's own financials show sales of plaintiff's fabric and for each sale calculates a royalty due. (Def.'s Dep. in Thomashower Aff. Ex. E at 2.) Defendant knew he was selling copyrighted patterns and not paying the royalties due to plaintiff.

Because defendant's infringement was willful, an award of $8,733.37 in copyright damages will be granted, doubling the contract damages sustained. See Fallaci, 568 F. Supp. at 1174; Lauratex Textile Corp. v. Allton Knitting Mills, 519 F. Supp. 730, 733 (S.D.N.Y. 1981).

The Court at its discretion may award costs and reasonable attorney's fees to the prevailing party in a copyright infringement action. 17 U.S.C. § 505; see Oboler v. Goldin, 714 F.2d 211, 213 (2d Cir. 1983). "In determining a reasonable attorney's fee, courts should consider the amount of work, the skill employed, damages at issue, and the result achieved." Id. at 213. In addition, Federal Rules of Civil Procedure 16(f) and 37(b)(2) authorize the Court to sanction a party for failure to attend a pretrial conference and failure to comply with a discovery order, respectively, by awarding his opponent reasonable attorney's fees caused by the failure.

In this case, the attorney's fees of $38,330.00 represent 176.1 billable hours, incurred from the date this action was commenced in April 1996 through the preparation of the default judgment motion in October 1998, at hourly rates of $250-75 for partners, $150-60 for associates, and $70 for paralegals. The hourly rates charged are reasonable given the nature of the case.

While an award of $38,330.00 for attorney's fees might seem somewhat high given the limited nature of the damages, see Obler v. Goldin, supra, several factors persuade the Court that the amount is reasonable in this case. First, at the time defense counsel withdrew from the case in 1997 he advised the court that his charges through March 31st of that year had been $25,069.43. In addition, plaintiff counsel's charges reflect time expended in attempts to compel defendant to comply with his discovery

obligations and as a result of his failure to appear at either the May 1st or June 2nd conference. Finally, the amount requested reflects only the fees through the preparation of the motion for a default judgment in 1998 and does not include any charges for the time counsel has spent in connection with the March, 1999, hearing or the preparation of the subsequent submissions. The Court, therefore, believes that a total award of $38,330.00 for all of counsel's time to date is appropriate under the Copyright Act, particularly when it is recognized that a substantial portion of these fees might have been awarded as sanctions for the failure of Mr. Griseto to comply with this Court's discovery orders and to attend conferences.

**CONCLUSION**

Judgment will be entered for the plaintiff granting a permanent injunction against defendant Griseto and awarding plaintiff a judgment of $58,684.74 against this defendant.

**SO ORDERED.**

Dated: New York, New York
September 22, 1999

JOHN S. MARTIN, JR., U.S.D.J.

Copies to:

For Plaintiff:
William J. Thomashower
Kaplan Thomashower & Landau
26 Broadway
New York, NY 10004-1899

For Defendant:
Nicholas L. Griseto
Propper International, Inc.
520 Huber Park Court
St. Charles, MO 63304

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----X

LEON B. ROSENBLATT TEXTILES, LTD.,
Plaintiff,

-against-

NICHOLAS L. GRISETO,
Defendant.

-----X

S. D. OF N. Y.

96 CIVIL 2925

JUDGMENT

RECEIVED
MAY 15 2000
U.S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

4:00MC00112CEJ

Whereas the above-captioned case having come before this Court and the matter having come before the Honorable John S. Martin, United States District Judge, and the Court, on September 22, 1999 having issued its Memorandum Opinion (82874) and Order granting a permanent injunction against defendant Griseto and awarding plaintiff a judgment of $58,684.74 against this defendant, it is,

**ORDERED, ADJUDGED AND DECREED:** That pursuant to the Court's Memorandum Opinion (82874) and Order dated September 22, 1999, plaintiff is hereby granted a permanent injunction against defendant Griseto and plaintiff is awarded a judgment of $58,684.74 against this defendant.

CERTIFIED
JAMES M. PARKISON

**DATED:** New York, New York
September 30, 1999

JAMES M PARKISON:

CLERK

BY:

DEPUTY CLERK

EXHIBIT
B

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 10/5/99